# GEORGE MASSEY, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

## 456 S.W.2d 867.

Court of Criminal Appeals of Tennessee. May 8, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

J. Kenneth Porter and Edward F. Hurd, Newport, for plaintiff in error.

David M. Pack, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Henry F. Swann, Dist. Atty. Gen., Dandridge, Ben W. Hooper, II, Newport, and Franklin Park, special counsel, Jefferson City, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below appeals from his conviction of murder in the second degree and his sentence to ten to twelve years in the penitentiary.

On December 18, 1968, he shot Andy Kelly, Jr., in the stomach with a shotgun outside The Shack, a tavern in Cocke County. Kelly died a few minutes later.

That afternoon the defendant and a friend, Kenneth Romines, had visited several taverns drinking beer. About dark they came to The Shack. The defendant was in a belligerent mood and threatened to whip one Leonard Stokely about a young lady in whom they were both interested. Romines prevented trouble between them by telling Stokely not to say anything to the defendant.

Following his threat to Stokely, the defendant and the deceased argued and the defendant invited him outside. The defendant went outside near the place his car was

parked and a little later the deceased, followed by Romines, also went there. The deceased had just lighted a cigar before going outside. Stokely and one Frank Turner watched from a window.

The defendant went to his automobile and took out the gun which he says he loaded at that time.

The evidence is in conflict on the facts of the homicide. Turner says it looked to him as if Kelly was backing up; that his hands were down; Stokely says the cigar was in his right hand and nothing in his left; Romines says the cigar was in his right hand and was still there when he fell.

After the defendant took his gun from the car, they talked. The deceased told him, "Ain't we been real good friends and buddies?"; and also said he was not afraid of the gun. Romines tried to get the defendant to put the gun away. He says the defendant warned the deceased not to advance and he (Romines) tried to hold him back; that the defendant had backed several feet. Stokely's testimony disagrees with this. The muzzle of the gun was four to six feet from the deceased when the defendant shot.

In his testimony, the defendant first said that Kelly was advancing on him with both hands in his pockets; he then said that his left hand was in a pocket. He says in substance that he knew that the deceased was a turbulent, violent person; that the deceased said he was going to kill him. At the same time he says they were good friends. He says he warned the deceased, backed up and only fired when the deceased was at the barrel of the gun.

After shooting Kelly, the defendant threw his gun in a garden and left. He was arrested by city police. By his testimony he was on his way to surrender to the sheriff. He was fully warned of his constitutional rights and told the officers that he did not kill Kelly or even have a gun; that they were good friends and that a stranger had threatened to kill Kelly. In his direct examination, the defendant says he told the officers everything but the truth.

By his assignments the defendant says the evidence preponderates against the verdict and in favor of his plea of self-defense.

The jury did not believe the defendant and accepted the theory of the state about the facts of the case. A conviction will not be reversed on the facts unless the defendant shows that the evidence preponderates against the verdict and in favor of his innocence. Pryor v. state, 217 Tenn. 695, 400 S.W.2d 700. The credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the trial court.

For the defense of self-defense to be well pleaded and made out, the defendant must convince the jury that the deceased's actions engendered in the defendant a genuine and well-founded fear of great bodily harm. Keith v. State, 218 Tenn. 395, 403 S.W.2d 758; Nance v. State, 210 Tenn. 328, 358 S.W.2d 327.

From the evidence in this case, it was the province of the jury to settle the issue of self-defense; and, the jury having seen and heard the witnesses and passed on their credibility, and decided the issues in

favor of the State's contention, we cannot say the evidence preponderates against that finding. See Arterburn v. State, 216 Tenn. 240, 391 S.W.2d 648. These assignments are overruled.

The defendant next contends that the greatest offense of which he could be convicted is voluntary manslaughter. The burden is on him to show circumstances which mitigate the crime from second degree murder. Thomas v. State, 210 Tenn. 297, 358 S.W.2d 315.

It is the duty of the jury to fix the degree of the homicide shown by the facts. By the account of the killing accepted by the jury, the defendant is guilty of second degree murder. Thomas v. State, supra. Malice is presumed from the use of a deadly weapon. Gann v. State, 214 Tenn. 711, 383 S.W.2d 32.

The presumption of malice has not been rebutted by the facts and circumstances and this assignment is overruled.

The judgment is affirmed.

DWYER and HYDER, JJ., concur.